MILORD A. KESHISHIAN, CA SBN 197835
milord@milordlaw.com
MILORD & ASSOCIATES, P.C.
10517 West Pico Boulevard
Los Angeles, CA 90064
Tel: (310) 226-7878
Fax: (310) 226-7879

Attorneys for Plaintiff
PACIFIC LOGISTICS CORP

FILED ___ LODGED
___ RECEIVED ___ COPY
AUG 2 3 2019
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

SEALED

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| PACIFIC LOGISTICS CORP, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC LOGISTICS PRIORITY MAIL, a business entity form unknown; JOHN DOE, said name being fictitious and unknown; DOES 2 through 10; and ROE CORPORATIONS 2 through 10,<br><br>Defendants. | CASE NO.: CV-19-05023-PHX-SMB<br><br>**PACIFIC LOGISTICS CORP'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## I. Introduction

Defendants defraud consumers by using confusingly similar trademarks and domain name to scam innocent consumers out of package delivery and insurance fees without shipping purchased products. An actually confused and scammed consumer mistakenly contacted Plaintiff instead of Defendants to inquire about a product shipment not received from Defendants. Plaintiff needs this Court's intervention to enjoin Defendants' fraud on consumers and infringement of Plaintiff's trademarks and damage to its goodwill.

## II. Statement of Facts

Pacific Logistics Corp ("PLC") is a world-renowned high-quality shipping and freight services company with commended customer service. Declaration of Eric Hockersmith ("Hockersmith Decl."), ¶3. For over twenty years, PLC has used Pacific Logistics™ and Pacific Logistics Corp™ as marks, including on its website, advertising, business cards, as part of its www.pacific-logistics.com domain name, and even on its office building and vehicles as shown below:



Hockersmith Decl., ¶4. PLC has developed its great reputation and continuously and exclusively used the Pacific Logistics Corp™, PLC PACIFIC LOGISTICS® plus design, and PLC® marks (collectively the "Pacific Logistics Marks") in the shipping and freight industries. Hockersmith Decl., ¶5. Specifically, PLC owns federally incontestable trademark registrations for PLC PACIFIC LOGISTICS CORP design mark (Registration

No. 4,245,361) and PLC word mark (Registration No. 4,245,364), both marks are registered in connection with services in International Class 39, namely: "Freight transportation by truck, rail, air and ship; Freight transportation consultation in the field of freight transportation by truck, rail, air and ship; Supply chain logistics and reverse logistics services, namely, storage, transportation and delivery of goods for others by truck, rail, air and ship." Hockersmith Decl., ¶¶6-7. PLC also uses its marks on its website and in its www.pacific-logistics.com domain. Hockersmith Decl., ¶8.

Pacific Logistics Priority Mail ("PLPM"), John Doe, Doe Defendants, and Roe Corporations (collectively, "Defendants") knowingly and willfully adopted a highly similar trademark in order to benefit from PLC's efforts.

 

**PLC's Mark**                  **Defendants' Accused Mark**

Defendants attempt to create an aura of legitimacy by publishing a website similar to the Plaintiff to further confuse consumers.



**PLC's Website**


**Defendants' Website**

These actions merely perpetuate a façade for Defendants to scam innocent customers and prevent them from realizing the shipping services they sought out. Defendants have successfully confused consumers into believing they are associated with Plaintiff.

Defendants operate a fake website storefront using the confusingly similar www.pacificlogisticsprioritymail.com domain name for a non-existent shipping company since January 2018, almost twenty years after PLC's first date of use. Declaration of Milord A. Keshishian ("Keshishian Decl."), ¶¶6, 29. Defendants' website includes fake customer testimonials and fake organization members. Keshishian Decl., ¶¶7-11. Google and LexisNexis Public Record searches establish the testimonial customers and organization members are fake. Keshishian Decl., ¶¶13-22. Defendants' website provides two locations in the United States, but Google Maps searches of the properties identify other businesses and do not list Defendants' fraudulent enterprise. Keshishian Decl., ¶23. Additionally, Defendants purport to use no less than three different email address extensions, including pacificlogisticsprioritymail@gmail.com, contact@pacificlogisticsprioritymail.com, and goerge.brolin@bestlogistic.com (purported Chairman and CEO's email address). Keshishian Decl., ¶¶6, 24-25, 28. The latter two email addresses (displayed on the Defendants' website) do not connect to a real inbox proving that Defendants are not a legitimate shipping and freight company. Keshishian Decl., ¶¶24-25. Moreover, the phone number listed on the www.pacificlogisticsprioritymail.com website does not connect to an

actual person. Keshishian Decl., ¶¶33-34.

On or about August 7, 2019, Catherine Gallagher – an actual confused consumer – emailed PLC through its info@pacific-logistics.com address. Hockersmith Decl., ¶10. Ms. Gallagher, mistakenly believing that PLC and Defendants were the same entity, inquired about her package's delivery status since she paid Defendants' insurance fees, attaching a screenshot of Defendants' invoice. Hockersmith Decl., ¶10. Prior to this communication, PLC never interacted with Ms. Gallagher and she was never one of its customers. Hockersmith Decl., ¶11. Prior to Ms. Gallagher's contact, PLC was not aware of Defendants' fraudulent operations. Hockersmith Decl., ¶12.

PLC forwarded Ms. Gallagher's email to its counsel Milord A. Keshishian, and he contacted Ms. Gallagher to alleviate her actual confusion and inform her that PLC and Defendants were not related entities. Keshishian Decl., ¶¶26-27. Ms. Gallagher responded by providing screenshots of her Western Union money transfer to Defendants for "refundable insurance," and forwarded her previous communications with Defendants. Keshishian Decl., ¶27-28.

Ms. Gallagher's email communications with PLPM demonstrate a typical scam to pressure Ms. Gallagher to pay additional fees via untraceable methods with a false promise of receiving her package. Keshishian Decl., ¶28. PLPM advised Ms. Gallagher she needed to pay $310 for additional "insurance" before the product could be shipped, which it would "refund" after the delivery. Keshishian Decl., ¶28. Ms. Gallagher complied and paid PLPM $310 via an untraceable Western Union transfer, PLPM then stated the package had insufficient "stamps" and required further payment of either an additional $322 for a three-year term or $505 for a five-year term for the release of her package. Keshishian Decl., ¶28. Ms. Gallagher expressed her frustration with PLPM, calling them "scammers," to which they responded that she was following bad advice and needed to remit payment. Keshishian Decl., ¶28. Ms. Gallagher then contacted Plaintiff – believing it was related to PLPM – regarding the delivery status of her package. Hockersmith Decl., ¶10.

Defendants carefully curated and crafted a fake online presence using infringing

trademarks and confusingly similar domain name and email address to confuse consumers and cause them to associate Defendants with PLC, thereby adding seeming legitimacy to their scam operations. As evidenced by Ms. Gallagher's confusion, Defendants have succeeded in not only infringing PLC's trademarks and harming its goodwill, but also defrauding consumers.

Without the Court's intervention, Defendants will continue scamming consumers and tarnishing PLC's trademarks. When Defendants learn of this action, they will likely erase all relevant information and transfer the domain names outside of this jurisdiction, preventing PLC from recovering and rendering this lawsuit fruitless. Therefore, the Court must enjoin Defendants at this early stage.

## III. Argument

A temporary restraining order, or preliminary injunction, should be entered where plaintiff establishes: (1) likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) the balance of equities is in plaintiff's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

The Lanham Act permits courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark ..." 15 U.S.C. § 1116(a). Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Chanel, Inc. v. Partnerships or Unincorporated Associations Identified on Schedule "A"*, No. 3:13-CV-02645-RS, 2013 WL 12120213, at *1 (N.D. Cal. June 14, 2013), (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (internal citations omitted)).

Federal Rule of Civil Procedure 65(b) states a court may issue a temporary

restraining order ("TRO") without notice to the adverse party or its attorney when:

> (a) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (b) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B).

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). Courts in this Circuit have granted TROs in trademark infringement cases to prevent defendants from continuing their infringing activity and freezing domain names. *See Chloe SAS v. Sawabeh Info. Servs. Co.*, No. 2:11-CV-04147-GAF (MANx), 2011 WL 13130013, at *2 (C.D. Cal. May 17, 2011) (granting TRO to prevent defendants from continuing their activities, freezing defendants' assets, and requiring a lock of defendants domain names where defendants were using plaintiffs' trademarks to sell counterfeit goods); *Tiffany (NJ), LLC v. 925ly.com*, No. 2:11-CV-00590-LDG-CWH, 2011 WL 13249925 (D. Nev. Sept. 27, 2011) (granting TRO freezing domain name transfer where defendants sold counterfeit goods under plaintiffs' trademarks); *Las Vegas Sands Corp. v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1080 (D. Nev. 2019) (granting preliminary injunction following a TRO freezing defendants' domain names that featured plaintiff's trademarks for similar services).

The Court should issue an injunction because PLC will likely prevail on the merits, Defendants' fraudulent actions are causing ongoing and immediate irreparable harm, the balance of equities favors PLC, and a TRO is in the public's interest to prevent Defendants' fraud.

### A. Likelihood of Success on the Merits

PLC is likely to succeed on the merits for its claims of (1) trademark infringement under 15 U.S.C. § 1114, (2) unfair competition/false designation of origin under 15 U.S.C. § 1125(a), (3) violation of the Anticybersquatting Consumer Protection Act under 15 U.S.C. §

...

1125(d), (4) common law trademark infringement, and (5) unfair competition under Cal. Bus. & Prof. Code § 17200.

1. **Trademark Infringement**

To state a claim for trademark infringement, a plaintiff must allege: (1) ownership of a valid, protectable mark; and (2) that the alleged infringer is using a confusingly similar mark. *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013).

In determining likelihood of confusion, courts in this Circuit look to the *Sleekcraft* factors, which include: (1) strength of plaintiff's trademarks; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) types of goods and consumer's degree of care; (7) defendants' intent; and (8) likelihood of expansion into the area of goods. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). "This list of factors . . . is neither exhaustive nor exclusive. Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion." *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992).

a. **Ownership of a Valid, Protectable Mark**

Federal trademark registrations constitute prima facie evidence of the validity and exclusive right to use the marks in commerce in connection with certain goods and services. *See Coca-Cola Co v. Overland Inc.*, 692 F.2d 506, 509 (9th Cir. 1969).

Here, PLC extensively uses its trademarks in connection with shipping and freight services and has amassed valuable goodwill over the past 20 years. PLC holds incontestable federal trademark registrations for its PLC PACIFIC LOGISTICS® and design and PLC® trademarks. Hockersmith Decl., ¶¶6-7. Because the marks have been registered for over five years, the incontestable status of these marks are "conclusive evidence of the validity of the registered mark and its registration, of the registrant's ownership of the mark, and of the registrant's 'exclusive right to use' the registered mark on the goods or services." 15 U.S.C.A. § 1115(b).

Further, PLC has common law trademark rights in its PACIFIC LOGISTICS™ mark

dating back to 1999. Hockersmith Decl., ¶4; Keshishian Decl., ¶¶29, 32; *see B & B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293, 1299, 1310, 191 L. Ed. 2d 222, 113 U.S.P.Q.2d 2045 (2015) ("One who first uses a distinct mark in commerce thus acquires rights to that mark."); *Hana Financial, Inc. v. Hana Bank*, 135 S. Ct. 907, 909, 190 L. Ed. 2d 800, 113 U.S.P.Q.2d 1365 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users.").

Alternatively, according to the WHOIS report, Defendants registered their infringing domain name and used the infringing marks in or about January 2018, almost twenty years after PLC's first use date. Keshishian Decl., ¶¶30-31. Thus, PLC holds valid, protectible trademarks, and has priority of use in the Pacific Logistics Marks.

### b. Strength of the Mark

The "strength" of the trademark is evaluated in terms of its conceptual strength and commercial strength. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) (citation omitted). The conceptual strength of a mark is determined on a scale from generic (afforded no protection), through descriptive (entitled to no protection absent a showing of secondary meaning) and suggestive (entitled to moderate protection), to arbitrary or fanciful (entitled to maximum protection). *See Id.*; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

PLC's trademarks were passed to registration by the trademark examiner, indicating that they at the very least suggestive and registerable without evidence of secondary meaning. See 3 *McCarthy on Trademarks and Unfair Competition* ("McCarthy on Trademarks") § 19:42 (5th ed.). Even assuming, *arguendo*, PLC's marks were descriptive, PLC's sales of hundreds of millions of dollars in the almost twenty-years before Defendants' infringement began is conclusive proof of the secondary meaning in PLC's Pacific Logistics mark. Hockersmith Decl., ¶9; see *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) ("[s]econdary meaning can be established in many ways, including . . . amount of sales . . ."). Therefore, this factor

weighs in favor of a finding of likelihood of confusion.

### c. Similarity of the Marks

In evaluating the similarity between the marks, this Circuit relies upon "axioms to guide this comparison: first, the marks must be considered in their entirety and as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighed more heavily than differences." *GoTo.com, Inc.*, 202 F.3d at 1206 (internal citations omitted).

At first glance, the marks here are plainly similar, including Defendants' use of a nearly identical font:

| PLC's Marks | Defendants' Accused Marks |
|---|---|
| PACIFIC LOGISTICS Corp™ PLC® | PACIFIC LOGISTICS PRIORITY MAIL |
| PLC Pacific Logistics Corp | Pacific Logistics Priority Mail |
| www.pacific-logistics.com | www.pacificlogisticsprioritymail.com |

Moreover, PLC includes a "stylized cutaway" in its design mark, which is copied both in depth and angle in the Defendants' mark.

The dominant portion of both marks are "PACIFIC LOGISTICS." Moreover, Defendants' use of the "PRIORITY MAIL" term does nothing to reduce the similarity of the dominant "PACIFIC LOGISTICS" portion of their mark by adding the generic term "priority mail" in smaller, dissimilar color, font below the dominant portion. *Filipino Yellow Pages*, 198 F.3d at 1147 (generic terms are not subject to trademark protection). Therefore, this factor weighs in favor of a finding of likelihood of confusion.

### d. Proximity of the Services

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999). Here, Defendants intentionally attempt to mimic PLC's exact freight and shipping services to defraud consumers. Therefore, this factor

weighs in favor of finding likelihood of confusion.

### e. Actual Confusion

"Evidence of actual confusion by consumers is strong evidence of likelihood of confusion." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 633 (9th Cir. 2005). Ms. Gallagher's misdirected email to PLC inquiring about the status of her package delivery from Defendants evidences actual confusion. Hockersmith Decl., ¶10. The email also evidences Defendants fraudulently passing off the Pacific Logistics Marks to increase the chance of actual confusion and to trade of PLC's goodwill. See *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003). Thus, this factor weighs in favor of a finding of likelihood of confusion.

### f. Marketing Channels

Both parties' websites advertise their shipping and logistics services. See *Brookfield Commc'ns*, 174 F.3d at 1057 (both parties utilizing the Internet "as a marketing and advertising facility . . . [is] consistently recognized as exacerbating the likelihood of confusion."). Therefore, this factor weighs in favor of a finding of likelihood of confusion.

### g. Defendants' Intent

An "intent to deceive is strong evidence of a likelihood of confusion." *Interstellar Starship Servs., Ltd. v. Epix*, 184 F.3d 1107, 1111 (9th Cir. 1999). Where a plaintiff has a strong reputation and the marks are similar, there is an inference of defendant's intent to deceive consumers. *K-Swiss, Inc. v. USA AISIQI Shoes Inc.*, 291 F. Supp. 2d 1116, 1125 (C.D. Cal. 2003).

Defendants' use of infringing Pacific Logistics trademarks including in its www.pacificlogisticsprioritymail.com domain name and pacificlogisticsprioritymail@gmail.com email address to defraud consumers evidences Defendants' intent to create sense of association, affiliation, collaboration, or sponsorship between the parties, where none actually exists, to defraud consumers. Further. Defendants' use PrivacyGuardian.org and CloudFlare to hide their identities while continuing to defraud and confuse consumers through an active website. Accordingly, this factor weighs in favor

of a finding of likelihood of confusion.

### h. Consumer's Degree of Care

In determining the degree of care by Internet users, the *Brookfield* court noted:

> In the Internet context, in particular, entering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership.

*Brookfield*, 174 F.3d at 1057. "Navigating amongst web sites involves practically no effort whatsoever, and arguments that Web users exercise a great deal of care before clicking on hyperlinks are unconvincing." *GoTo.com*, 202 F.3d at 1209.

Here, both Parties primarily use the Internet to advertise their services. Therefore, the degree of consumer care is low and this factor weighs in favor of likelihood of confusion.

### i. Likelihood of Expansion into the Area of Goods

"The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent." *Brookfield*, 174 F.3d at 1060 (internal citation omitted). Because Defendants fraudulently mimic PLC's services, this factor weighs in favor of likelihood of confusion.

### j. Balance of likelihood of confusion factors

On balance, the factors weigh in favor of a finding of likelihood of confusion. Thus, PLC will likely prevail on its trademark infringement cause of action.

### 2. Anticybersquatting Consumer Protection Act

"The Anti-Cybersquatting Consumer Protection Act establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted "with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010).

Here, Defendants registered and use PLC's Pacific Logistics Marks in its infringing domain name, www.pacificlogisticsprioritymail.com. Keshishian Decl., ¶30. Defendants'

domain is confusingly similar to PLC's www.pacific-logistics.com domain name, where both domains begin with the "Pacific Logistics" mark. Defendants' actions show they "acted with bad faith" where the websites are similar and they refer to themselves as "Pacific Logistics." Keshishian Decl., ¶28. Further, Defendants' adoption of a confusingly similar domain name and email address in efforts to divert customers away from PLC indicates demonstrates its bad faith, putting it outside of the safe harbor defense. *See GoPets Ltd. v. Hise*, 657 F.3d 1024, 1033 (9th Cir. 2011) (court found registration of domains to achieve "commercial gain" by confusing consumers and diverting them from plaintiff amounted to bad faith).

Therefore, PLC will likely prevail on its violation of the Anticybersquatting Consumer Protection Act cause of action.

### 3. Unfair Competition / False Designation of Origin

A false designation of origin occurs when a defendant misleads consumers as to the producer of the services that are offered for sale. *Dastar,* 539 U.S. at 37. Likewise, unfair competition relates to the use of deceptive and misleading marks. *Two Pesos*, 505 U.S. at 768. "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical is there a 'likelihood of confusion?'" *New W. Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979),

As detailed above, PLC will likely prevail on its trademark infringement cause of action because it can prove the marks are confusingly similar. Therefore, PLC will likely prevail on its unfair competition and false designation of origin causes of action.

### 4. Common Law Trademark Infringement and Unfair Competition under Cal. Bus. & Prof. Code § 17200

The likelihood of confusion test is also used in analyzing common law trademark infringement claims. *See Cleary v. News Corp.*, 30 F.3d 1255, 1264 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent'

12
PACIFIC LOGISTICS CORP'S *EX PARTE* MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

to claims made under the Lanham Act.").

As stated above, PLC is likely to succeed on the merits of its federal trademark infringement claim. PLC therefore would prevail on its state law claims that rely upon the same analysis.

**B.     Likelihood of Irreparable Harm**

In a trademark case, a plaintiff must show irreparable harm is likely to occur in the absence of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Here, there is immediate and clear irreparable harm because Defendants are blatant scam artists. Defendants are using the Pacific Logistics Marks to cloak themselves as a legitimate operation to defraud consumers into paying them with untraceable methods for non-existent shipments of products. Consumers like Ms. Gallagher are actually confused by Defendants' use of PLC's Pacific Logistics Marks. This confusion and fraudulent scheme will only escalate with the passage of time absent injunctive relief. *See* McCarthy on Trademarks § 2:23 (trademark infringement is a type of fraud); *Toyo Tire & Rubber Co. v. Kabusikiki Kaisha Tokyo Nihoon Rubber Corp*, No. 2:14-CV-01847-JAD-VCF, 2015 WL 6501228, at *4 (D. Nev. Oct. 26, 2015) (irreparable harm established where plaintiff has "spent considerable time and effort building its reputation" and the infringing defendant "has merely piggy-backed off of [the plaintiff's] success.").

Irreparable harm will also continue if Defendants' domain names are not frozen and locked by its registrar, NameSilo, because Defendants may transfer the domain name to a company outside this Court's – or any U.S. based court's – jurisdiction. And if Defendants' Google gmail email address registered with Google is not preserved, locked and frozen Defendants may delete evidence of their illicit enterprise. *See Las Vegas Sands*, 360 F. Supp. 3d at 1080 ("Irreparable harm is also implicated where there is a potential for an infringing defendant to transfer domain names to a different registrar outside of a court's jurisdiction."). Further, irreparable harm will continue if CloudFlare does not preserve and freeze the hosting of the website because Defendants may transfer the website host to a

company outside this Court's – or any U.S. based court's – jurisdiction. Further, if CloudFlare does not make the infringing account inaccessible and does not prevent Defendants from altering or deleting the infringing website or content, additional innocent consumers may be defrauded. *Shutterfly, Inc. v. ForeverArts, Inc.*, No. CV 12-3671 SI, 2012 WL 2911887, at *3 (N.D. Cal. July 13, 2012) (court finding irreparable harm where defendant may shift infringing website overseas). Without an order to freeze, lock, or seize, Defendants will continue their illegal activities, causing other consumers to be swindled in addition to further damaging PLC's trademarks. Further, there is the probability Defendants will destroy evidence and/or transfer the domain name to a registrar outside of the United States to evade this lawsuit. In either event, PLC would be barred from properly investigating the extent of damage caused by Defendants to its trademarks, would not be able to realize adequate recovery as Defendants would continue its infringing activities outside of this Court's reach, and would prevent it from adequately recovering damages and equitable relief. Thus, irreparable harm will continue without the Court's intervention.

### C. Balance of Equities Favor PLC

The balance of equities favor PLC because Defendants are not actually providing any shipping services and are only defrauding the general public. *See* McCarthy on Trademarks § 2:23 (trademark infringement is a form of fraud). Defendants should not be able to continue their fraud and trade off PLC's goodwill, when PLC has spent significant time and money in its efforts to promote, advertise, and market its legitimate services. *See Las Vegas Sands*, 360 F. Supp. 3d at 1081.

The injunctive relief sought here is limited in scope, in that it preserves the *status quo* by preventing Defendants from transferring any domain names away from this jurisdiction and holding assets in the United States. *See* Fed. R. Civ. P. 65. The inconvenience to the Defendants' business activity, if any, are minimal as the injunction only serves to preserve evidence and ensure that Defendants do not transfer or otherwise dispose of the domain name and related information. *See Shutterfly*, 2012 WL 2911887 at *3.

Therefore, the balance of equities favors the granting of a temporary restraining

PACIFIC LOGISTICS CORP'S *EX PARTE* MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

order.

D. **Public Interest**

An injunction will best serve the public's interest because people will no longer be defrauded by Defendants into paying for non-existent shipment and insurance services. *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1067 (N.D. Cal. 2012) ("Preventing consumer confusion serves the public interest and there is a strong policy in favor of protecting rights to trademarks."). Defendants created all the necessary parts to appear legitimate, like a true con artist, including use of the Pacific Logistics Marks, having a website with alleged warehouse locations in the U.S. and testimonials of happy customers. The issuance of the injunction will limit Defendants' contact with the public, and in turn, the people will no longer be harassed for money by Defendants.

## IV. Conclusion

Consumers, like Ms. Gallagher, continue to be scammed by Defendants' use of the Pacific Logistics Marks. Defendants have proven that they cannot be trusted to play fairly, will likely transfer the domains outside of this jurisdiction, and destroy evidence absent the Court's intervention at this early stage of litigation.

Issuance of an injunction is proper here where: (1) PLC will likely succeed on the merits of each of their claims because there is a likelihood of confusion between the marks and Defendants engaged in cybersquatting; (2) there is an ongoing irreparable harm resulting from Defendants' activities, which would cease with the Court's injunction; (3) the balance of equities favors PLC as the injunction seeks to maintain the *status quo*, and attempts to preserve evidence and prevent the Defendants from deleting or moving the domains, websites, or fraudulent emails outside this Court's jurisdiction; and (4) the public is best served by the issuance of an injunction because it will effectively cause Defendants to cease operations in the interim and they will not be confused as to which services are

/ / /

/ / /

/ / /

fraudulent (PLPM) versus legitimate (PLC).

Accordingly, the Court should grant PLC's *ex parte* motion for a temporary restraining order.

Dated: August 21, 2019

Respectfully submitted,

**MILORD & ASSOCIATES, P.C.**

By: /s/ Milord A. Keshishian
Milord A. Keshishian
Attorneys for Plaintiff
PACIFIC LOGISTICS CORP